UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------- X
MOHAMMED NABI and RIFAT RIZVI,                      :
*on behalf of themselves, FLSA Collective*          :
*Plaintiffs and the Class,*                          :
                                                     :
                              Plaintiffs,            :            Case No.  14 CIV 4635 (VEC)
                                                     :
              -against-                              :                    ECF Case
                                                     :
HUDSON GROUP (HG) RETAIL, LLC,                      :
AIRPORT MANAGEMENT                                  :
SERVICES, LLC and JOHN DOES 1-10,                  :
                                                     :
                              Defendants.            :
----------------------------------------------------- X

<br>

### DEFENDANTS' MEMORANDUM OF LAW
### IN OPPOSITION TO PLAINTIFFS'
### MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

FACTUAL STATEMENT ..................................................................................................... 3

    I.      Plaintiffs' Employment and Termination ................................................. 3

    II.     Hudson's Diverse Nationwide Operations................................................. 4

          A.    Hudson's Airport Joint Venture Operations .................................. 5

          B.    Daily Commuter Station Operations Differ Significantly From Airport Operations .................................................................... 5

    III.    Hudson Manager Roles Vary Widely Depending On Operation And Location ............................................................................................ 6

ARGUMENT ......................................................................................................................... 7

    I.      FLSA Collective Certification Standard.................................................... 7

    II.     Plaintiffs' Motion Remains Barred by Khan ......................................... 7

    III.    A Nationwide Class Of Managers Cannot Be Remotely Appropriate ................. 8

          A.    Plaintiffs' Knowledge Is Limited To One Position (Operations Manager) And Two Locations (Penn Station and Grand Central) ........... 8

          B.    Plaintiffs' Own Statements Show That They Are Not Similarly Situated To Other Managers ...................................................... 11

                1.    Plaintiffs Are Not Similarly Situated To Managers Nationwide................................................................ 11

                2.    Plaintiffs Are Not Similarly Situated Even To Managers They Identify As "Non-Managerial" ........................... 14

          C.    Plaintiffs Cannot Overcome Their Evidentiary Deficiencies ................. 18

                1.    Plaintiffs Are Not Similarly Situated Merely Due to Common Policies................................................... 19

                2.    Plaintiffs Cannot Justify Nationwide Certification Based On Conclusory Affidavits And Inapplicable Hearsay ................. 20

                3.    Plaintiffs' Single Integrated Enterprise Argument Is Irrelevant............................................................ 22

                4.    Plaintiffs' Policy And Discovery Arguments Are Misplaced...... 23

    CONCLUSION................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ahmed v. T.J. Maxx Corp.*,
   No. 10-CV-3609 (ADS) (ETB), 2013 WL 2649544 (E.D.N.Y. June 8, 2013) ................11, 22

*Ali v. New York City Health and Hosps. Corp.*,
   No. 11 Civ. 6393 (PAC), 2013 WL 1245543 (S.D.N.Y. March 27, 2013) ...........................10

*Archie v. Grand Cent. P'ship, Inc.*,
   997 F. Supp. 504 (S.D.N.Y. 1998)...........................................................................................22

*Arpi v. Sterbach Holdings, LLC*,
   No. 12 Civ. 6764, 2012 WL 6200909 (S.D.N.Y. Dec. 10, 2012)...........................................23

*Brennan v. Arnheim & Neely*,
   410 U.S. 512, 93 S. Ct. 1138 (1973).......................................................................................22

*Evancho v. Sanofi–Aventis U.S. Inc.*,
   No. 07-2266 (MLC), 2007 WL 4546100 (D.N.J. Dec.19, 2007) ...........................................24

*Fernandez v. Wells Fargo Bank, N.A.*,
   Nos. 12 Civ. 7193 (PKC), 12 Civ. 7194 (PKC), 2013 WL 4540521
   (S.D.N.Y. Aug. 28, 2013) .......................................................................................................21

*Fernandez v. On Time Ready Mix, Inc.*,
   No. 14 Civ. 4306 (BMC), 2014 WL 5252170 (E.D.N.Y. Oct. 4, 2014)................................21

*Flores v. Osaka Health Spa, Inc.*,
   No. 05 Civ. 962VMKNF, 2006 WL 695675 (S.D.N.Y. March 16, 2006) .............................14

*Guaman v. 5 M Corp.*,
   No. 13 Civ. 03820 (LGS), 2013 WL 5745905 (S.D.N.Y. Oct. 23, 2013) .............................22

*Guillen v. Marshalls of MA, Inc.*,
   750 F. Supp. 2d 469 (S.D.N.Y. 2010)...............................................................................7, 9, 22

*Guillen v. Marshalls of MA, Inc.*,
   841 F. Supp. 2d 797 (S.D.N.Y. 2012)..................................................................8, 14, 18, 19

*Guillen v. Marshalls of MA, Inc.*,
   No. 09 Civ. 9575 (LAP) (GWG), 2012 WL 2588771 (S.D.N.Y. July 2, 2012)
   (Preska, J.)........................................................................................................................8, 9, 19

*Guzelgurgenli v. Prime Time Specials Inc.*,
   883 F. Supp. 2d 340 (E.D.N.Y. 2012) ...................................................................................21

*Hamadou v. Hess Corp.*,
   915 F. Supp. 2d 651 (S.D.N.Y. 2013)...............................................................21, 23

*Harhash v. Infinity West Shoes, Inc.*,
   No. 10 Civ. 8285 (DAB), 2011 WL 4001072 (S.D.N.Y. Aug. 25, 2011) ...............................21

*Huang v. J&A Entertainment*,
   No. 09-CV-5587 (ARR) (VVP), 2010 WL 2670703 (E.D.N.Y. June 29, 2010)....................21

*Ikikhueme v. CulinArt, Inc.*,
   No. 13 Civ. 293(JMF), 2013 WL 2395020 (S.D.N.Y. June 3, 2013).....................................15

*Jason v. Falcon Data Com, Inc.*,
   No. 09 Civ. 03990, 2011 WL 2837488 (E.D.N.Y. 2011) .....................................................20

*Jenkins v. TJX Companies Inc.*,
   853 F. Supp. 2d 317 (E.D.N.Y. 2012) ..........................................................................19, 20

*Jin Yun Zheng v. Good Fortune Supermarket Group (USA), Inc.*,
   No. 13-CV-60 (ILG), 2013 WL 5132023 (S.D.N.Y. Sept. 12, 2013) ..........................2, 10, 20

*Khalil v. Original Homestead Rest., Inc.*,
   No. 07 Civ. 695 (RJH), 2007 WL 7142139 (S.D.N.Y. Aug. 9, 2007) ...................................20

*Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*,
   No. 12 Civ. 265, 2012 WL 1981507 (S.D.N.Y. June 1, 2012)...............................................20

*Khan v. Airport Management Services, LLC, et al.*,
   No. 10 Civ. 7735 (NRB), 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011) .................... *passim*

*Myers v. Hertz*,
   624 F.3d 537 (2d Cir. 2010), *cert. denied*,132 S. Ct. 368 (2011) ..........................7, 19, 20, 24

*Pefanis v. Westway Diner*,
   No. 08 Civ. 002, 2008 WL 4546526 (S.D.N.Y. Oct. 8, 2008) ...............................................20

*Pefanis v. Westway Diner, Inc.*,
   No. 08 Civ. 002, 2010 WL 3564426 (S.D.N.Y. Sept. 7, 2010) ...............................................1

*Peng Bai v. Fu Xing Zhuo*,
   No. 13-CV-5790 (ILG), 2014 WL 5475395 (E.D.N.Y. Oct. 29, 2014) .................................21

*Prizmic v. Armour, Inc.*,
   No. 05-CV-2503 (DLI) (MDG), 2006 WL 1662614 (E.D.N.Y. June 12, 2006)....................23

*Qi Zhang v. Bally Produce, Inc.*,
   No. 12-CV-1045 (FB) (JMA), 2013 WL 1729274 (E.D.N.Y. April 22, 2013)..................9, 20

*Qing Gu v. T.C. Chikurin, Inc.*,
  No. CV 2013-2322 (SJ) (MDG), 2014 WL 1515877 (E.D.N.Y. April 17, 2014)..................10

*Raniere v. Citigroup Inc.*,
  827 F. Supp. 2d 294 (S.D.N.Y. 2011)....................................................................................23

*Sanchez v. Gansevoort Mgmt. Grp., Inc.*,
  No. 12 Civ. 75 (KBF), 2013 WL 208909 (S.D.N.Y. Jan. 10, 2013) ......................................21

*Sanchez v. JMP Ventures, L.L.C.*,
  No. 13 Civ. 7264 (KBF), 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014) ............................14, 24

*Sharma v. Burberry Ltd.*,
  No. 12-6356 (LOW) (AKT), --- F. Supp. 2d ---, 2014 WL 4385426
  (E.D.N.Y. Sept. 4, 2014)........................................................................................................10

*Sipas v. Sammy's Fishbox, Inc.*,
  No. 05 Civ. 10319, 2006 WL 1084556 (S.D.N.Y. Apr. 24, 2006)..........................................20

*Vasquez v. Vitamin Shoppe Indus. Inc.*,
  No. 10 Civ. 8820 (LTS) (HTK), 2011 WL 2693712 (S.D.N.Y. July 11, 2011)......................10

*Winfield v. Citibank, N. Am.*,
  843 F. Supp. 2d 397 (S.D.N.Y. 2012)....................................................................................21

*Zhao v. Benihana, Inc.*,
  No. 01 Civ. 1297, 2001 WL 845000 (S.D.N.Y. May 7, 2001)...............................................20

## INTRODUCTION

Defendants Hudson Group (HG) Retail, LLC ("HG") and Airport Management Services, LLC ("AMS") (collectively "Hudson" or "Defendants"), through their counsel, and in opposition to Mohammed Nabi ("Nabi") and Rifat Rizvi's ("Rizvi") (collectively "Plaintiffs") Motion for Conditional Collective Certification ("Motion") under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA"), file this Memorandum of Law in Opposition to Plaintiffs' Motion, supported by the Declarations of Senior Vice President of People Rick Yockelson ("Yockelson Dec."), Executive Vice President of Strategy and Development Mike Mullaney ("Mullaney Dec."), Phillip H. Wang, Esq. and exhibits thereto ("Wang Dec." and "Ex.", respectively), and 19 additional Hudson Managers (collectively "Opposition").[1]

Following the parties' exchange of position letters and November 7, 2014 conference, this Court advised Plaintiffs' counsel that a collective certification motion would be futile unless supported by "dramatically more evidence" that is "a lot better than what's been given now." Lacking any meaningful additional proof, Plaintiffs nevertheless insist that this Court certify a nationwide class of managers based on one attorney's declaration claiming that anonymous individuals wish to join the suit; and their own declarations alleging that they purportedly "observed that other [Grand Central and Penn Station] employees [who] primarily did non-managerial work."   (Declaration of Mohammed Nabi ("Nabi Dec.") ¶ 2; Declaration of Rifat Rizvi ("Rizvi Dec.") ¶ 2.)  Plaintiffs fall woefully short of meeting the standard for conditional certification.

---

[1] Attached as exhibits to the Wang Dec. are sworn declarations from Hudson Managers nationwide, including: Sultana Ahmed ("Ex. 7"), Daisy Begum ("Ex. 8"), Kamlesh Desai ("Ex. 9"), Anna Drammeh ("Ex. 10"), Uditha Goonatilaka ("Ex. 11"), Maria Gutierrez ("Ex. 12"), Naeem Haider ("Ex. 13"), Rajinder Kaur ("Ex. 14"), Rafiqul Khander ("Ex. 15"), Anna Kovalyk ("Ex. 16"), Habib Mazumder ("Ex. 17"), Yvonne Montero ("Ex. 18"), Mansoor Shah ("Ex. 19"), Gurpreet Singh ("Ex. 20"), Edwin Soto ("Ex. 21"), Asim Syed ("Ex. 22"), Gul Tariq ("Ex. 23"), Samuel Trani ("Ex. 24"), and Oscar Umana ("Ex. 25").

First, this case remains barred by *Khan v. Airport Management Services, LLC, et al.*, No. 10 Civ. 7735 (NRB), 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011), where Judge Buchwald rejected an identical attempt to certify a nationwide class of managers. Like Plaintiffs here, *Khan* also had no personal knowledge of operations outside of Grand Central and Penn Station, offered conclusory declarations from himself and other former Hudson employees, and claimed that he and "other Operations Managers performed 'clerk activities' rather than managerial functions." *Id.* at *4.

Plaintiffs' case is even weaker. While *Khan* at least had experience working two different manager positions (Warehouse Manager and Operations Manager), Plaintiffs here worked only one manager position (Operations Manager). Plaintiffs nonetheless seek to certify a nationwide class comprised of ***ten different positions***. (Memorandum of Law in Support of Plaintiffs' Motion ("Memo.") at 4.) *Khan* also submitted sworn declarations from three former Hudson employees supporting his motion. Here, except for their own their own self-serving declarations, Plaintiffs fail to offer ***any*** other declarations to support their Motion.

Further, a declaration from Plaintiffs' attorney claiming that a few anonymous individuals are "inclined" to join this suit, does not in any way merit certification.[2] By Plaintiffs' logic, nationwide certification should be awarded anytime an attorney submits an affidavit claiming that there are other individuals who wish to join a lawsuit. Further, Plaintiffs' own declarations are merely comprised of conclusory claims that they "observed" certain managers (identified by first name only) perform "non-managerial" work. (Nabi Dec. ¶ 2; Rizvi Dec. ¶ 2.) Plaintiffs' counsel has unsuccessfully tried this same tactic before. *See, e.g., Jin Yun Zheng v. Good Fortune Supermarket Group (USA), Inc.*, No. 13-CV-60 (ILG), 2013 WL 5132023, at *5

---

[2] *See* Declaration of Anne Seelig ("Seelig Dec.") ¶ 10, which was submitted along with the declarations of Nabi and Rizvi as part of Plaintiffs' Motion.

(E.D.N.Y. Sept. 12, 2013) (rejecting similarly deficient evidence limited to "first names", "anonymous hearsay statements" and statements by an "unnamed friend").

Finally, to the extent the Court considers Plaintiffs' declarations to be potentially relevant, Hudson has gathered 19 sworn declarations from Hudson managers nationwide, including the managers Plaintiffs claim are "non-managerial." *See* Exs. 8, 10, 13, 14, 17, and 20. These managers are in no way "similarly situated" to Plaintiffs, because they have expressly refuted Plaintiffs' claims through sworn declarations describing their job duties. *See Khan*, 2011 WL 5597371, at *4 (denying certification where Hudson managers nationwide "expressly reject[ed] the notion that they do not perform managerial functions."). Plaintiffs cannot be similarly situated to ***any*** other managers – let alone a nationwide class. Plaintiffs' Motion must be denied.

## FACTUAL STATEMENT

### I.    Plaintiffs' Employment and Termination

Nabi was hired as a newsstand worker at Hudson's Grand Central Station operations. (Compl. ¶ 31.)[3] He was later promoted to Operations Manager, remaining at Grand Central until he was terminated on or about May 12, 2013. (Compl. ¶¶ 32, 35; Nabi Tr., 160:19-23.) Rizvi, after being fired from her two prior jobs, was hired by Hudson as a cashier at Penn Station. (Compl. ¶ 40; Rizvi, 11:10-13:25.) She was promoted to Operations Manager at Penn Station in January 2004, and later transferred to Grand Central where she remained until she was terminated in September 2012. (Compl. ¶¶ 40, 41; Rizvi Tr. 48:23-49:1.)

---

[3] Plaintiffs' June 25, 2014 Complaint ("Compl.") is attached as Ex. 5 to the Wang Dec. Relevant pages to all deposition transcript ("Tr. __") cites are also attached to the Wang Dec. (¶¶ 3-6) as follows: Nabi (Ex. 1), Rizvi (Ex. 2), Mullaney (Ex. 3) and Yockelson (Ex. 4).

## II.    Hudson's Diverse Nationwide Operations

Hudson Group (HG), Inc. owns Defendants HG and AMS under a "very diverse and complicated business structure."  (Mullaney Tr. 7:19-9:24, 27:9-22.)  Under each are a "very wide, very large number of companies" that operate "over 150 different lease agreements."  (*Id.* 10:4-8.)  HG Retail and AMS also partner with approximately 70 different airport joint venture ("JV") operations, "run and managed" with "local partners" pursuant to federal guidelines.  (*Id.* 14:4-17:22.)  By law, these local JV partners are responsible for independently managing their operations and employees, and Hudson cannot "dictate or control [their] partner manager[s]." (*Id.* 19:9-20:14.)  Such employees do not even receive their paychecks from Hudson – but rather from their local JV.  (*Id.* 18:4-19.)  Collectively, these separate entities operate "over 700 stores in 70 markets" including more than 100 different specialty brand stores – such as Coach, Bulgari, Harley Davidson and Sunglass Hut.  (*Id.* 11:24-12:19.)

Hudson's operations differ significantly from each other in terms of location, customer base, and operational requirements.   (Yockelson Dec. ¶¶ 12-13; Mullaney Tr. 7:16-8:2.) Notwithstanding the unique characteristics of each location, the operations (to the extent they can be categorized) are primarily segregated into two types: Airports and daily Commuter Stations. (Mullaney Dec. ¶¶ 4-5.)  Unlike Hudson's Airport locations, Commuter Station stores are "high volume" operations where most customers have little time to shop, spending just a few minutes to purchase daily necessities, such as newspapers, magazines, snacks, or beverages.  Also unlike Airport locations, Commuter Stations are staffed to maximize sales primarily during the morning and evening rush hours.  (*Id.* ¶¶ 16-18.)

Approximately one-third of the workforce is governed by 21 different collective bargaining agreements ("CBA") with jurisdiction over 35 different Hudson locations. (Yockelson Dec. ¶ 5.)  Each CBA is individually negotiated with different Unions dictating the

unique terms and conditions of employment for that location's employees, affecting both non-exempt (i.e. bargaining unit) employees and exempt managers alike. (Yockelson Dec. ¶ 5.)

### A.     Hudson's Airport Joint Venture Operations

At each Airport, Defendants enter into separate and unique JV Agreements with Airport Concession Disadvantaged Business Enterprises ("ACDBEs") that set forth the terms and conditions governing the "day-to-day affairs" of each location, including: the composition of local Management Committees; the appointment or dismissal of a Manager; and the ACDBE's responsibilities in personnel decisions, budgets, recordkeeping, bookkeeping, recruiting, employee training and development, performance reviews, and more.   (Mullaney Dec. ¶ 7.) Each of Defendants' JV partnerships across the nation have their own unique contractual arrangements, as well as separate and independent Management Committees.   (*Id.* ¶ 8.)   More than 70% of Hudson's employees and managers work out of its JV Airport operations. (Yockelson Dec. ¶ 6.)

### B.     Daily Commuter Station Operations Differ Significantly From Airport Operations

Separate and apart from its Airport operations, Defendants also operate Hudson News retail locations at certain daily Commuter Stations.   These include Penn Station and Grand Central Station in New York, the only locations where Plaintiffs worked.   The Commuter Station operations consist almost exclusively of Hudson News newsstand stores.   (Mullaney Dec. ¶ 14-15.)  Except for a handful of Hudson Booksellers and AeroMarts, Defendants' Commuter Station operations do not involve any Specialty Stores, National Retailers, Regional Retailers, or Food & Beverage operations.   (*Id.* ¶¶ 9-15.)   Further, unlike Airport locations, Commuter Stations like Grand Central and Penn Station, do not have any JV business partners.   (Mullaney Tr. 21:15-23; Mullaney Dec. ¶ 15.)   Thus, Defendants' Commuter Station operations differ significantly from

the JV Airport operations in terms of stores, customers, operations, and manager job duties. (Yockelson Dec. ¶¶ 11-13; Mullaney Dec. ¶¶ 6-16.)

### III.    Hudson Manager Roles Vary Widely Depending On Operation And Location

Defendants employ at least 16 different types of exempt managers at their retail operations.  In addition to the Operations Manager positions that Plaintiffs worked, Defendants also utilize the services of General Managers ("GM"), Assistant General Managers ("AGM"), Human Resources Managers ("HRM"), Book Operations Managers ("BOM"), Customer Service Managers ("CSM"), Merchandising Managers ("MM"), Café Managers ("CM"), Office Administration Managers ("OAM"), Loss Prevention Managers ("LPM"), Store Managers ("SM"), Terminal Managers ("TM"), Training Managers ("TRM"), Overnight Managers ("ONM"), and Bookkeeping Managers ("BM"). (Yockelson Dec. ¶ 9.)

The GM is the highest ranking manager at each operation, and oversees anywhere from 8 to 200 employees and 1 to 30 separate retail stores and Food & Beverage operations.  (*Id.* ¶ 10.)  There is no set managerial hierarchy below the GM.  (*Id.*)  Defendants utilize many different titles of managers in locations based upon operational requirements, such as the size and scope of the location.  (*Id.*)

Finally, the duties of Hudson managers vary due to many reasons, including the location of the operation.  An Airport Book Operations Manager may supervise Cash Room Associates while a Penn Station Operations Manager may supervise a Utility Associate, which is a class of hourly employee exclusive to operations governed by the collective bargaining agreement between Hudson and the Newspaper Guild of New York.  (Yockelson Dec. ¶ 11.)

**ARGUMENT**

I.     **FLSA Collective Certification Standard**

The Second Circuit has "provided clear guidance on the standard district courts should apply to motions seeking certification of a 'collective action[.]'" *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (citation omitted), *cert. denied*, 132 S. Ct. 368 (2011).  Plaintiffs must establish that "there are other employees…who are similarly situated with respect to their job requirements and with regard to their pay provisions, on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." *Id.* at 555 (citation omitted) (internal quotations omitted).  The Second Circuit also emphasizes that "unsupported assertions" are not sufficient.  *Id.* (citations omitted).  Here, Plaintiffs fall far short of carrying carry their burden of proof, which requires factual showings based on "substance." *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010).

II.     **Plaintiffs' Motion Remains Barred by *Khan***

This case is a copy of *Khan v. Airport Management Services, LLC, et al.*, No. 10 Civ. 7735 (NRB), 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011), which (as of today) has been cited as authority by 22 Courts throughout the Second and Third Circuits.  There, Judge Buchwald refused to collectively certify a nationwide class of Hudson managers because (among other reasons) Khan had no personal knowledge of operations outside of Grand Central and Penn Station, and offered only conclusory declarations that he and "other Operations Managers performed 'clerk activities' rather than managerial functions."   *Id.* at *4 (denying certification where Hudson managers nationwide "expressly reject[ed] the notion that they do not perform managerial functions.").

Here, Plaintiffs similarly seek this Court's approval of a nationwide class of all Hudson "Covered Employees" at "over 600 stores in over 70 locations across North America."  (Compl.

¶¶ 7, 17; Memo. at 5.)   However, Plaintiffs also have no personal knowledge of operations outside of Grand Central and Penn Station, and similarly disclaim all managerial responsibilities. (Compl. ¶¶ 31, 33, 39-42, 48; Nabi Tr. 160:14-23.)   Here, certification should also be denied: "the result reached in *Khan* is in accord with other cases that rejected nationwide collective action approvals in the absence of evidence that persons nationwide were similarly situated to the plaintiff."  *Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 2d 797, 803 (S.D.N.Y. 2012) (*citing Khan*, 2011 WL 5597371, at *4) (collecting cases in accord with *Khan*), *adopted in full*, *Guillen v. Marshalls of MA, Inc.*, No. 09 Civ. 9575 (LAP) (GWG), 2012 WL 2588771 (S.D.N.Y. July 2, 2012) (Preska, J.).

## III.   A Nationwide Class Of Managers Cannot Be Remotely Appropriate

*Khan* is not Plaintiffs' only impediment to certification.  Plaintiffs' Motion also fails because neither Plaintiffs, ***nor any individuals they identify***, worked outside of Penn Station or Grand Central.  Thus a nationwide class cannot be appropriate.  Further, Plaintiffs' own sworn statements – when compared to sworn declarations from their purported "non-managerial" colleagues – demonstrate that Plaintiffs are not "similarly situated" to ***any*** managers.  Finally, the conclusory self-serving declarations Plaintiffs offer are wholly inadequate to support nationwide certification.

### A.   Plaintiffs' Knowledge Is Limited To One Position (Operations Manager) And Two Locations (Penn Station and Grand Central)

Plaintiffs seek a nationwide class of at least ten different Hudson News managers, which they characterize as "Covered Employees," including: Assistant General Managers; Assistant Operations Managers; Operations Managers; Assistant Managers; Operation Managers of Books;

Bookstore Managers; Operation Managers of Merchandise; Merchandizing Managers; Loss Prevention Managers; and Specialty Brand Managers.  (Memo. at 4.)[4]

However, Plaintiffs worked solely as Operations Managers during the relevant timeframe.  (Compl. ¶¶ 32, 41.)  Further, aside from identical conclusory statements that other employees performed "non-managerial work that was the same or similar to the work I did" (Nabi Dec. ¶ 2; Rizvi Dec. ¶ 2), Plaintiffs provide no other details regarding the job titles they seek to represent.  *See Khan*, 2011 WL 5597371, at \*5, n. 7 ("Khan does not even claim to have personal knowledge that individuals with titles other than Warehouse Manager or Operations Manager have been misclassified as exempt.  Thus, we fail to understand why Khan would continue to seek such an overbroad class.").  Plaintiffs' Motion should be rejected for this reason alone.  *Id*. (rejecting same collective certification motion because Hudson maintains "at least sixteen different managerial titles").

Plaintiffs also admit that both they and the individuals they "observed" as "non-managerial" worked **only** at Grand Central and Penn Station.  (Nabi Dec. ¶¶ 1, 2; Rizvi Dec. ¶¶ 1, 2.)  This is "far too localized to merit a conditional nationwide class certification."  *Guillen*, 2012 WL 2588771, at \*2; *Guillen*, 750 F. Supp. 2d at 477 (plaintiff similarly had "no personal knowledge about how stores, other than those at which he was an employee, operated").  Indeed, Plaintiffs' own declarations reinforce the fact that they have no knowledge of working conditions outside of Penn Station and Grand Central.  All of the purported "non-managerial" managers that Plaintiffs identify – by their own admission – worked either at Grand Central or Penn Station.

---

[4] These Hudson managers, collectively, make up approximately 480 employees nationwide.  (Yockelson Dec. 8.) Confusingly, Plaintiffs' Declarations each offer another seemingly broader definition of "Covered Employees" consisting of:  "other employees employed by Defendants at Hudson newsstands [who] primarily did non-managerial work."  (Nabi Dec. ¶ 2; Rizvi Dec. ¶ 2.)  *See Qi Zhang v. Bally Produce, Inc.*, No. 12-CV-1045 (FB) (JMA), 2013 WL 1729274, at \*3 (E.D.N.Y. April 22, 2013) (rejecting certification, and confining "similarly situated" analysis to more limited scope where plaintiffs also offered conflicting definitions).

(Nabi Dec. ¶ 2; Rizvi Dec. ¶ 2.)   Such a "geographically concentrated cluster of [managers] . . . is too thin a reed on which to rest a nationwide certification[.]"   *Vasquez v. Vitamin Shoppe Indus. Inc.*, No. 10 Civ. 8820 (LTS) (HTK), 2011 WL 2693712, at *3 (S.D.N.Y. July 11, 2011).

The best Plaintiffs can muster regarding nationwide knowledge are claims by Rizvi that she spoke to a Grand Central manager who used to work at LaGuardia Airport; and she overheard a conversation between unnamed men.   (Rizvi Tr. 142:14-143:10; 151:6-153:16.) *Compare Khan*, 2011 WL 5597371, at *3 (rejecting nationwide class where plaintiff claimed to "know" about operations nationwide because he "spoke[] to similar employees[.]").   When repeatedly pressed on details about the conversation between these unnamed individuals, Rizvi's only response was: "same bullshit."   (Rizvi Tr. 145:18-19, 153:25-154:1.)   *See Sharma v. Burberry Ltd.*, No. 12-6356 (LOW) (AKT), --- F. Supp. 2d ---, 2014 WL 4385426, at *15 (E.D.N.Y. Sept. 4, 2014) ("vague references to unidentified [managers]" insufficient).

Nabi, similarly, could recall only "some friend" who told him about operations outside of Grand Central.   (Nabi Tr. 160:19-161:23.)   *See Jin Yun Zheng*, 2013 WL 5132023 at *6 ("statements of an unnamed friend" insufficient to support certification); *Ali v. New York City Health and Hosps. Corp.*, No. 11 Civ. 6393 (PAC), 2013 WL 1245543, at *3 (S.D.N.Y. March 27, 2013) ("conversations with other respiratory therapists" insufficient).   Where, as here, Plaintiffs "fail to provide specific factual allegations, courts routinely deny leave to send a collective action notice."   *Qing Gu v. T.C. Chikurin, Inc.*, No. CV 2013-2322 (SJ) (MDG), 2014 WL 1515877, at *4 (E.D.N.Y. April 17, 2014) (*citing Khan*, 2011 WL 5597371, at *4) (collecting other cases).

Finally, because there are "vast differences in the practices of individual stores across the country…conditional certification is simply not appropriate." *Ahmed v. T.J. Maxx Corp.*, No. 10-CV-3609 (ADS) (internal quotations omitted) (ETB), 2013 WL 2649544, at *14 (E.D.N.Y. June 8, 2013) (collecting cases). As explained in the Section II of the Factual Statement, *supra*, Hudson's nationwide operations differ greatly due to variations in location, operation (Airport or Commuter Station), JV arrangement, and more. This same disparity was addressed in *Khan*, where the Court noted that Hudson's airport locations operate as "joint ventures with local Disadvantaged Business Enterprises (pursuant to federal regulations) and usually include both Hudson News shops and shops of retail brands[.]" *Khan*, 2011 WL 5597371 at *1, n. 2. The Court therefore denied certification because Commuter Stations "do not operate as joint ventures and generally consist of Hudson News stores only." *Id.* (discussing operational differences in rejecting certification). Based on these facts, nationwide certification cannot be appropriate.

**B.      Plaintiffs' Own Statements Show That They Are Not Similarly Situated To Other Managers**

**1.      Plaintiffs Are Not Similarly Situated To Managers Nationwide**

Plaintiffs try to distinguish the concededly "prior negative decision" of *Khan* by arguing that "Defendants' own testimony demonstrates that a large pool of similarly situated employees exists [sic] who may have claims." (Memo. at 5, 12.) In support, Plaintiffs distort snippets of Yockelson's testimony to mean that "Covered Employees" perform "identical" duties nationwide.[5] (*Id.* at 12.) Notwithstanding the misleading nature of these cites, Plaintiffs entirely

---

[5] For example, Plaintiffs claim that "Defendants testified that Covered Employees delivered and collected newspapers, worked at a cash register, watched customers to avoid theft, stocked shelves and assisted customers to find merchandise." (Memo. at 11.) However, Plaintiffs conceal that Yockelson testified only regarding Nabi, and in fact stated "*He could have done that…I don't know his history of employment …I'm sure he could have [done] that, plus a myriad of other things[.]*" (Yockelson Tr. 58:10-17.) Plaintiffs also contend that Yockelson testified that "Covered Employees" spend "zero minutes a day performing training, and may spend the entire day working the cash registers or stocking shelves." (Memo. at 11.) These are Plaintiffs' counsels' words, posed as outlandish

miss the point.  Even if "Covered Employees" perform the same duties nationwide – which they

do not – Plaintiffs insist that they performed ***none*** of those duties.   Indeed, Plaintiffs have

repeatedly sworn:

- They had zero authority to hire, fire, schedule or supervise employees.  (Compl. ¶¶ 39, 48.)

- They only "delivered and collected newspapers, worked a cash register, watched customers to prevent theft, stocked shelves and assisted customers to find merchandise."  (*Id.* ¶¶ 33, 42.)

- Their job duties were the same as a cashier's and they would just spend "all day…work[ing] on the cash register" or "watch[ing]" for theft.  (Rizvi Tr. 2 33:12-22, 131:9-16.)

- They "primarily did non-managerial work[.]"  (Nabi Dec. ¶ 2; Rizvi Dec. ¶ 2.)

- Their "primary duties as a newsstand worker did not include managerial responsibilities or the exercise of independent business judgment." (Nabi Dec. ¶ 5; Rizvi Dec. ¶ 5.)

- Their "responsibilities did not include the authority to hire and fire other employees; making recommendations regarding the hiring, firing, advancement or discipline of other employees; evaluating the job performance of other employees; authorizing family or medical leave; and/or planning or controlling a budget."  (Nabi Dec. ¶ 5; Rizvi Dec. ¶ 5.)[6]

However, Plaintiffs are thwarted by their own claims.  Hudson managers nationwide

cannot be "similarly situated" to Plaintiffs because they regularly[7]:

- Supervise and delegate work to an hourly staff of between 5 to 70 associates by, for example: "tell[ing] the employees what to do and where to go"; spending "90% of my day performing managerial duties"; "overlooking everyone's work"; and "mak[ing]

---

hypotheticals to which Yockelson responded: "*I have no idea,*" "*may have happened,*" and "*could be possible.*" (Yockelson Tr. 72:8-73:7.)

[6] Plaintiffs also claim that they never received any wage statements, which is false.  (Nabi Dec. ¶ 6; Rizvi Dec. ¶ 6.) It is curious that they continue to make this representation to the Court, given that they were confronted with their signed wage statements during their depositions.  (Nabi Tr. 84:16-87:18; Rizvi Tr. 68:24-70:6; Wang Dec. ¶ 8, Ex. 6.)

[7] Defendants' Opposition is supported by declarations from Assistant General Managers, Operations Managers, Office Managers, Books Managers, Merchandise Managers, and Warehouse Managers at Grand Central, Penn Station, Newark International Airport, and Seattle-Tacoma International Airport.

sure everyone is doing their job."[8]

- Disciplining employees "on the spot" by, for example: sending home "repeatedly tardy" workers "immediately" and "without pay"; giving warnings "almost every day"; "implement[ing] progressive discipline"; sending employees home for "insubordination" or "harassing and bullying others"; "regularly disciplin[ing] and terminat[ing] employees for repeat absences"; warning employees "either you work or go home; you cannot decide where you can work."[9]

- Counsel and train associates by, for example: instructing them to "make small talk [with customers] on topics such as the weather"; "always looking for hard workers to reward"; and conducting training classes.[10]

- Exercise independent judgment and discretion by, for example: making "executive decisions on my own"; utilizing "expertise and an understanding of variances…to make sure the company's inventory levels are appropriately stocked"; placing book orders based on sales reports; "independently handl[ing] most operation and personnel issues" without involvement from the GM or AGM; "delegat[ing] how to best distribute the staff"; utilizing accounting skills; analyzing "Top 20 Weekly Reporters to assess sales activity"; urging their Supervisors to "use their own independent judgment whenever possible."[11]

- Maximize sales by, for example: always "looking for business opportunities"; strategically using sales data; setting "sales goals and targets"; utilizing "advanced sales skills" learned in the "Dufry Plus One Management Program"; "ensuring that my staff and I make every attempt to maximize sales for the company"; "compil[ing] and report[ing] daily sales figures for the Regional Vice President"; and doing everything possible to "beat sales goals."[12]

- Enforce company policies, such as dress code and customer service.[13]

- Make recommendations to the GM on hiring, discipline (up to and including termination), advancement, and promotion of the hourly staff.[14]

---

[8] Ex. 9 ¶¶ 11-12; Ex. 11 ¶¶ 11-14, 23; Ex. 12 ¶¶ 6, 12, 23-24; Ex. 15 ¶¶ 15, 17; Ex. 16 ¶¶ 5-6, 11-19; Ex. 17 ¶¶ 12, 24; Ex. 18 ¶¶ 8-14; Ex. 19 ¶¶ 11, 12, 15, 18; Ex. 22 ¶¶ 9, 22-23; Ex. 23 ¶¶ 14-15, 29; Ex. 24 ¶¶ 11-14; Ex. 25 ¶¶ 9, 12, 14.

[9] Ex. 9 ¶¶ 23-24; Ex. 12 ¶¶ 13-15; Ex. 16 ¶¶ 12-13, 21; Ex. 18 ¶¶ 14-20.

[10] Ex. 9 ¶¶ 18-19; Ex. 11 ¶¶ 23-28; Ex. 12 ¶¶ 19-20; Ex. 16 ¶¶ 12, 16; Ex. 17 ¶¶ 7, 14, 22, 25; Ex. 18 ¶¶ 14-20; Ex. 19 ¶ 21; Ex. 22 ¶¶ 12, 15-16; Ex. 23 ¶¶ 17, 24; Ex. 24 ¶ ¶ 13-14; Ex. 25 ¶ 25.

[11] Ex. 7 ¶¶ 11-12; Ex. 12 ¶¶ 13; Ex. 15 ¶ 14; Ex. 16 ¶¶ 10, 18; Ex. 18 ¶¶ 7-11; Ex. 23 ¶ 12-13, 21-24.

[12] Ex. 7 ¶ 12; Ex. 9 ¶¶ 14-17; Ex. 11 ¶¶ 29-36; Ex. 12 ¶¶ 23-25; Ex. 15 ¶ 11; Ex. 16 ¶¶ 16, 18; Ex. 17 ¶¶ 14-19; Ex. 18 ¶¶ 25-27; Ex. 19 ¶¶ 13, 18-19; Ex. 22 ¶ 16; Ex. 23 ¶¶ 17-20; Ex. 24 ¶¶ 15-16; Ex. 25 ¶¶ 26-29.

[13] Ex. 9 ¶¶ 23-24; Ex. 11 ¶¶ 27, 34; Ex. 12 ¶¶ 13-16; Ex. 16 ¶¶ 14; Ex. 17 ¶¶ 14, 21, 26; Ex. 18 ¶¶ 14-20; Ex. 19 ¶¶ 18, 22, 36; Ex. 22 ¶¶ 18, 23-25; Ex. 23 ¶¶ 25-27; Ex. 24 ¶¶ 13-14, 18; Ex. 25 ¶¶ 19, 30-31.

[14] Ex. 9 ¶¶ 23-27; Ex. 11 ¶¶ 17-28; Ex. 12 ¶¶ 13-29; Ex. 15 ¶ 20; Ex. 16 ¶ 12; Ex. 17 ¶ 29; Ex. 18 ¶¶ 14-20; Ex. 19 ¶¶ 22-27; Ex. 22 ¶¶ 12-21; Ex. 23 ¶¶ 29, 32-35; Ex. 24 ¶¶ 19-20, 22; Ex. 25 ¶¶ 15-25.

- Independently create employee work schedules and/or send employees on breaks.[15]

- Handle complaints from unruly customers, hourly staff, and Union delegates.[16]

- Attend "management meetings" with the GM and other managers to discuss operations, sales, personnel, and more.[17]

- Essentially act as the "eyes and ears" of the GM.[18]

Therefore Plaintiffs' own sworn statements demonstrate that they are not similarly situated to Hudson managers at Grand Central, Penn Station, or anywhere else across the nation. *Guillen*, 841 F. Supp. 2d at 802 (similar facts meriting "identical result") (*citing Khan*, 2011 WL 5597371, at *4).

### 2.    Plaintiffs Are Not Similarly Situated Even To Managers They Identify As "Non-Managerial"

In an attempt to overcome their deficiencies, Plaintiffs identify various individuals as purported "non-managerial" employees.  (Nabi Dec. ¶ 2; Rizvi Dec. ¶ 2.)  However, this ploy also fails.  Plaintiffs simply rehash complaint allegations, list various individuals by first name, and claim that they "observed" individuals performing "non-managerial" duties.  (Nabi Dec. ¶ 2; Rizvi Dec. ¶ 2.)  *See Flores v. Osaka Health Spa, Inc.*, No. 05 Civ. 962VMKNF, 2006 WL 695675, at *3 (S.D.N.Y. March 16, 2006) (affidavit's "broad conclusory allegations" insufficient to certify class).  These are "precisely the kind of unsupported assertions and conclusory allegations that courts in this District have found to be insufficient to conditionally certify a class under § 216(b)."  *Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (KBF), 2014

---

[15] Ex. 9 ¶¶ 20-21; Ex. 11 ¶¶ 14-16; Ex. 12 ¶ 25; Ex. 16 ¶ 10; Ex. 17 ¶ 27; Ex. 18 ¶¶ 11-12; Ex. 19 ¶ 15-16; Ex. 22 ¶ 27; Ex. 23 ¶ 23-24; Ex. 24 ¶ 21; Ex. 25 ¶¶ 14, 43.

[16] Ex. 11 ¶¶ 26-27; Ex. 12 ¶¶ 19-20; Ex. 16 ¶ 13; Ex. 17 ¶ 26; Ex. 19 ¶¶ 13-14; Ex. 22 ¶ 21; Ex. 23 ¶ 22; Ex. 24 ¶ 18; Ex. 25 ¶ 21.

[17] Ex. 9 ¶¶ 26-27; Ex. 11 ¶¶ 35-36; Ex. 12 ¶ 29; Ex. 16 ¶¶ 7-8; Ex. 17 ¶ 29; Ex. 19 ¶ 20; Ex. 22 ¶ 28; Ex. 23 ¶ 32; Ex. 24 ¶ 22; Ex. 25 ¶ 31.

[18] Ex. 11 ¶ 10; Ex. 12 ¶¶ 13, 22; Ex. 16 ¶ 19; Ex. 17 ¶ 6; Ex. 18 ¶¶ 7-8, 13; Ex. 19 ¶ 11; Ex. 22 ¶ 29; Ex. 23 ¶¶ 29, 35; Ex. 24 ¶ 22; Ex. 25 ¶ 11.

WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) (rejecting similar "list of generalized allegations that have been molded into a declaration which reads similarly to the complaint") (*citing Ikikhueme v. CulinArt, Inc.*, No. 13 Civ. 293(JMF), 2013 WL 2395020, at *2–3 (S.D.N.Y. June 3, 2013) (rejecting nationwide certification where plaintiff worked at only one location).

These purported "non-managerial" managers are in no way "similarly situated" to Plaintiffs.  Indeed, they have ***expressly refuted*** Plaintiffs' claims through their own sworn declarations.[19]  Contrary to Plaintiffs' claims, each of these individuals routinely perform the managerial duties that Plaintiffs entirely disclaim, including (but not limited to) the regular supervision of hourly staff; exercise of independent decision-making and judgment; authority to make recommendations to the GM regarding the hiring, discipline (up to and including termination), advancement, and promotion of the hourly staff.

For example, Anna Drammeh cannot be "similarly situated" to Plaintiffs, because she is the "most senior Operations Manager on duty in the PM Shift" and handles "almost all operational and personnel issues at Penn Station" including emergencies.  (Ex. 10 ¶¶ 12-13.) She rarely contacts the GM with a question: "at most, maybe once every month or two."  (*Id.* ¶ 12.)  Ms. Drammeh sets work schedules and delegates work assignments based on employee strengths and weaknesses.  (*Id.* ¶¶ 15-22.)  As a manager, she does everything possible to maximize sales, constantly instructing her staff to "provide the best possible customer service." (*Id.* ¶¶ 18-29.)  Not only does Ms. Drammeh regularly make recommendations to the GM on hiring, discipline, advancement, and promotion, she recognizes hard working employees by lobbying for raises on their behalf.  (*Id.* ¶¶ 30-36.)

---

[19] *See* Exs. 8, 10, 13, 14, 17, and 20.  These declarations are submitted in addition to those already set forth in Argument Section III.B.1  Iqbal Khan, identified by Rizvi, is no longer employed with Hudson.  (Rizvi Dec. ¶ 2.) However, he also was not "similarly situated" to Plaintiffs, because he performed the same managerial duties that Plaintiffs entirely disclaim.  (Ex. 21 ¶ 38.)

Likewise, Grand Central Operations Manager Habib Mazumder also cannot be "similarly situated" to Plaintiffs.  Unlike Plaintiffs, Mr. Mazumder shares "supervision of approximately (18) Sales Associates and Watchmen" during the PM shift.  (Ex. 17 ¶¶ 6, 12.)  As Operations Manager, Mr. Mazumder is responsible for maximizing sales, and therefore is "always looking for business opportunities for the company."  (*Id.* ¶ 14.)  He trains and counsels the hourly staff on good customer service "daily" – making sure that employees do not "look negative at all; they must do their best to make customers happy."  (*Id.* ¶ 15.)  As Operations Manager, Mr. Mazumder will receive a bonus if his location exceeds monthly goals.  He therefore reviews daily sales figures, even setting his "own sales goals and targets for [his] shift, to beat the General Manager's number."  (*Id.* ¶ 18.)

Gurpreet Singh, a Warehouse Manager at Penn Station, is also not "similarly situated" to Plaintiffs.  Mr. Singh regularly "perform[s] managerial duties, directing employees on how to receive inventory, how to return products to vendors, and how to display the merchandise in the retail stores."  (Ex. 20 ¶ 11.)  He "perform[s] management duties on a daily basis" and will therefore "direct [his] staff in a number of ways, such as in how to minimize shrink (i.e. shoplifting) in the stores and how to properly implement company policies like customer service."  (*Id.* ¶ 13.)  Not only does Mr. Singh have discipline authority, he recommends new hires as well – including his current overnight expeditor, Suvhir Barot.  (*Id.* ¶ 16.)  Mr. Singh holds a Master's of Science Degree from Guru Nanak Dev University in Punjab, India, and a Bachelor's Degree in Education from Punjab University, and describes himself as a "fair and measured manager" who will always "watch out for my staff."  (*Id.* ¶¶ 4, 23.)

As a Grand Central Operations Manager, Rajinder Kaur "share[s] supervision with one other Operations Manager over approximately eighteen (18) Sales Associates and Watchmen, as

well as an hourly Supervisor, spread out over the five retail locations." (Ex. 14 ¶ 11.)   Among

other managerial duties, Ms. Kaur "help[s] maximize sales by assessing customers' needs, and

ensuring the retail locations carry all the products customers are demanding." (*Id.* ¶ 15.)   She

also ensures her hourly staff are following Hudson's company policies, including its customer

service policies: "I remind them to smile more, greet customers, and thank customers for their

business." (*Id.* ¶ 16.)   Among other managerial duties, Ms. Kaur "make[s] sure cashiers are

working "efficiently"; "motivate[s] Sales Associates to expedite each transaction quicker";

"independently send[s] employees on breaks"; and "direct[s] overall employee coverage at the

stores." (*Id.* ¶ 22.)

Plaintiffs even drag a deceased colleague, Naeem Haider, into their lawsuit claiming that

he too primarily performed "non-managerial" duties. (Nabi Dec. ¶ 2; Rizvi Dec. ¶ 2.)   However

Mr. Haider – a former Civil Engineer in Pakistan and Operations Manager at Grand Central –

previously attested (in *Khan*) to performing all of the managerial duties that Plaintiffs disclaim.

(Ex. 13 ¶¶ 3-27.) Indeed, Mr. Haider shared supervision of "approximately twenty-two to

twenty-three Sales Associates and Watchmen during [his] shift." (*Id.* ¶ 11.)   Mr. Haider also

regularly "utilize[d] independent judgment and discretion in performing [his] duties" by, for

example "direct[ing] my staff in a number of ways, such as how to minimize shrink (i.e.

shoplifting) in the stores and how to properly implement company policies on customer service."

(*Id.* ¶ 13.)

Not only did Mr. Haider train new employees, he "receive[d] employment applications

from walk-in applicants, and conduct[ed] pre-interviews whereby [he] decide[d] whether or not

to send the applicant up to the General Manager for a second interview." (*Id.* ¶ 15.)   As a PM

Operations Manager, Mr. Haider independently handled personnel and operations issues, such as

17

publisher visits, sending employees home, customer complaints, leaking ceilings, and more.  (*Id.* ¶¶ 17-21.)  Unlike Plaintiffs, Mr. Haider made clear that: "if an employee is not following company policies, I will give them a verbal warning.  If the violation is serious, I will write up the incident and forward it to the General Manager."  (*Id.* ¶ 17.)  Not surprisingly, Mr. Haider was considered by his former GM Soto to be his "'go-to' Operations Manager [because he] understood how to handle different situations when I was not around."  (Ex. 21 ¶ 29.)

Finally, Plaintiffs speciously claim that a Grand Central Office Manager/Bookkeeper, Daisy Begum, was also "non-managerial." However, as an Office Manager, Ms. Begum spends the majority of her time in the office – not on the selling floor.  She therefore performs "duties that Operations Managers do not conduct at all, especially on the selling floor."  (Ex. 8 ¶ 10.) These include Z-readings and credit card audits; completing and verifying accuracy of sales reports; compiling and reporting daily sales figures for the Regional Vice President; coordinating drug testing; handling accounts payable and accounts receivable matters; and daily accounting tasks.  (*Id.* ¶¶ 9-10.)  Under no circumstances can an Office Manager or Bookkeeper, like Ms. Begum, be similarly situated to Plaintiffs.

As demonstrated, Plaintiffs disclaim all managerial duties, and cannot be similarly situated to Penn Station and Grand Central Managers, let alone Operations Managers nationwide. *See Guillen*, 841 F. Supp. 2d at 801-02 (collecting cases) (it is an "elemental notion" that collective action requires a showing that employees are similarly situated "with respect to the harm suffered by that plaintiff.").

### C.  Plaintiffs Cannot Overcome Their Evidentiary Deficiencies

Given their weak evidence, Plaintiffs resort to various alternative arguments, ignoring the fact that (by their own words) they are not "similarly situated" to other managers.  However, these alternative arguments are misplaced, illogical, and/or lack relevant authority.

### 1.      Plaintiffs Are Not Similarly Situated Merely Due to Common Policies

Plaintiffs contend that they are "similarly situated" to "Covered Employees" simply because they are "subject to Defendants' same employment policies." (Memo. at 12-13.) By Plaintiffs' estimation, any employee that shares the "same employee handbook" or receives the "same or similar type of wage statement" is "similarly situated." (Memo. at 13.) Not surprisingly, Plaintiffs can cite to no authority for this proposition. Indeed, it was expressly rejected by *Khan*, 2011 WL 5597371, at *4: "reliance on the centralized job descriptions maintained by defendants is misplaced." Accordingly, "Courts in this Circuit have routinely held that the mere fact of a common FLSA-exempt designation, job description, or uniform training is insufficient to find [managers] 'similarly situated' for FLSA purposes." *Guillen*, 2012 WL 2588771, at *1 (*citing Khan*, 2011 WL 5597371, at *4) (collecting other cases).

Further, certification is appropriate only if potential opt-in plaintiffs "together were victims of a common policy or plan ***that violated the law***." (emphasis added) *Myers*, 624 F.3d at 555. Here, Plaintiffs can show no "de facto illegal policy." *Jenkins v. TJX Companies Inc.*, 853 F. Supp. 2d 317, 321-22 (E.D.N.Y. 2012) (denying certification where plaintiff also claimed he was forced to perform "non-exempt job duties" despite job descriptions); *Guillen*, 841 F. Supp. 2d at 801 (rejecting notion that "any employee classified as exempt…is entitled to approval of a collective action…simply based on the employee's testimony that he was required to perform non-exempt tasks.").

And to the extent common policies or job descriptions are potentially relevant, Plaintiffs are foreclosed from this argument: they both repeatedly swore that they performed ***none*** of the managerial duties listed in each Hudson job description, including Operations Manager. (Nabi Tr. 122:23-128:10, 136:2-25, 156:24-158:17; Rizvi Tr. 110:21-112:22, 137:20-138:2.) In contrast, Hudson managers have routinely swore that they performed the duties set forth in their

relevant job descriptions.  (Desai Dec. ¶ 28; Kaur Dec. ¶32; Tariq Dec. ¶36.)  *See Qi Zhang v.*
*Bally Produce, Inc.*, 2013 WL 1729274, at *4 (E.D.N.Y. April 22, 2013) ("even assuming that
defendants had such a [common] policy, that policy, standing alone, would be insufficient to
warrant conditional certification absent some evidence indicating that the other vegetable loaders
had similar duties and responsibilities as plaintiff.") (*citing Jenkins*, 853 F. Supp. 2d at 323;
*Myers*, 624 F.3d at 555).

### 2. Plaintiffs Cannot Justify Nationwide Certification Based On Conclusory Affidavits And Inapplicable Hearsay

Plaintiffs then cite various inapplicable cases to support their theory that a nationwide
class is appropriate based on their conclusory affidavits.  *See, e.g., Khalil v. Original Homestead*
*Rest., Inc.*, No. 07 Civ. 695 (RJH), 2007 WL 7142139 (S.D.N.Y. Aug. 9, 2007); *Khamsiri v.*
*George & Frank's Japanese Noodle Rest. Inc.*, No. 12 Civ. 265 (PAE), 2012 WL 1981507
(S.D.N.Y. June 1, 2012); *Pefanis v. Westway Diner*, No. 08 Civ. 002 (DLC), 2008 WL 4546526
(S.D.N.Y. Oct. 8, 2008).  (Memo. at 13-15.)

However, Plaintiffs again miss the point.  They need to show that they are "similarly
situated" to the purported "Covered Employees" nationwide.  Plaintiffs' counsel has already
tried, unsuccessfully, this same argument before.  *See Jin Yun Zheng*, 2013 WL 5132023, at *7
(rejecting Plaintiffs' citation to *Khalil*, *Khamsiri*, and *Pefanis*, because plaintiff still "fail[ed] to
demonstrate that she is *similarly situated* to the employees she seeks to have noticed.")
(emphasis in original)).[20]   This Court has "broad discretion" to reject such conditional

---

[20] The other cases Plaintiffs cite are similarly distinguishable and pre-date the Second Circuit's 2010 *Myers v. Hertz*
decision.  *See, e.g., Sipas v. Sammy's Fishbox, Inc.*, No. 05 Civ. 10319 (PAC), 2006 WL 1084556, at *2 (S.D.N.Y.
Apr. 24, 2006) (pre-*Myers* decision certifying a class of parking attendants located in one area – City Island, Bronx,
New York); *Zhao v. Benihana, Inc.*, No. 01 Civ. 1297 (KMW), 2001 WL 845000, at *2 (S.D.N.Y. May 7, 2001)
(pre-*Myers* decision where only class notice was approved, and only for servers at single location); *Jason v. Falcon*
*Data Com, Inc.*, No. 09-CV-03990 (JG) (ALC), 2011 WL 2837488 at *1 (E.D.N.Y. 2011) (granting certification
only because defendants expressly admitted that plaintiff and other class members all "do the same thing"); *Pefanis*

certification motions.  *Jin Yun Zheng*, 2013 WL 5132023 at *7; *see also Peng Bai v. Fu Xing Zhuo*, No. 13-CV-5790 (ILG), 2014 WL 5475395, at *4 (E.D.N.Y. Oct. 29, 2014) ("plaintiff's failure to submit an affidavit from any employee other than himself…is particularly striking") (*citing Khan*, 2011 WL 5597371, at * 5).

Plaintiffs also concede the weakness of their evidence by arguing that "hearsay evidence" alone is enough to justify a nationwide class.  (Memo. at 15.)  However, each of Plaintiffs' cases are misplaced, either granting certification on very narrow terms, or only where far greater evidence was presented.[21]  Further, Plaintiffs can point to no case holding that an affidavit from counsel claiming that anonymous individuals were "inclined" to join the lawsuit can justify a nationwide class.  (Seelig Dec. ¶ 10.)  *See Fernandez v. On Time Ready Mix, Inc.*, No. 14 Civ. 4306 (BMC), 2014 WL 5252170, at *2 (E.D.N.Y. Oct. 4, 2014) (fact that "plaintiff does not identify any of the other similarly situated employees by name…is fatal to plaintiff's motion.") (*citing Khan*, 2011 WL 5597371, at *4-5).

Courts in this Circuit have repeatedly declined to authorize collective action notice when presented with far more evidence than what Plaintiffs offer here.  *See, e.g., Fernandez v. Wells Fargo Bank, N.A.*, Nos. 12 Civ. 7193 (PKC), 12 Civ. 7194 (PKC), 2013 WL 4540521, at *5, 9 (S.D.N.Y. Aug. 28, 2013) (three declarations, all of which failed to cite any specific or concrete

---

*v. Westway Diner, Inc.*, No. 08 Civ. 002 (DLC), 2010 WL 3564426, at *4 (S.D.N.Y. Sept. 7, 2010) (certification involved a single diner).

[21] *See, e.g., Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 666-67 (S.D.N.Y. 2013) (certification granted only because plaintiffs offered "detailed account" of working conditions elsewhere; certification was also limited to specific Hess "territories" where plaintiffs offered actual evidence of timesheet doctoring); *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 403-04 (S.D.N.Y. 2012) (certification allowed only because "[f]ive plaintiffs, one opt-in plaintiff, and four declarants each allege they were" not paid overtime); *Harhash v. Infinity West Shoes, Inc*., No. 10 Civ. 8285 (DAB), 2011 WL 4001072, at *3-4 (S.D.N.Y. Aug. 25, 2011) (certification granted only as to five New York City shoe stores where plaintiffs and opt-in plaintiffs actually worked); *Guzelgurgenli v. Prime Time Specials Inc*., 883 F. Supp. 2d 340, 351 (E.D.N.Y. 2012) (granting certification of limited scope, and only where plaintiffs provided "non-hearsay evidence of a common illegal practice" which defendants failed to address); *Sanchez v. Gansevoort Mgmt. Grp., Inc*., No. 12 Civ. 75 (KBF), 2013 WL 208909, at *2 (S.D.N.Y. Jan. 10, 2013) (certification of one hotel only); *Huang v. J&A Entm't.*, No. 09 CV-09-5587 (ARR) (VVP), 2010 WL 2670703 (E.D.N.Y. June 29, 2010) (certification of a local tour bus company only).

directive that showed unlawful activity, were not evidence of common unlawful policy across multiple states); *Ahmed*, 2013 WL 2649544, at *14 (sworn deposition testimony of nine current and former managers and four 30(b)(6) designees, affidavits from a former assistant manager and a current coordinator, and uniform job descriptions and online complaints from current and former employees of defendants nationwide, were insufficient to support conditional certification); *Guillen*, 750 F. Supp. 2d at 477 (affidavits from managers representing nine stores insufficient to support conditional certification).

### 3.    Plaintiffs' Single Integrated Enterprise Argument Is Irrelevant

Plaintiffs next argue that "conditional collective certification is appropriate for Covered Employees" because Hudson qualifies as a "single integrated enterprise" under 29 U.S.C. § 203(r).   (Memo. at 16-20.)   Plaintiffs again miss the point.   29 U.S.C. § 203(r) simply addresses whether an entity is an enterprise covered by the FLSA – not whether employees are "similarly situated" for purposes of collective certification.   Indeed, the two cases cited by Plaintiffs have nothing to do with FLSA certification; they discuss only whether an employer qualifies as a "common enterprise for purposes of the FLSA."   *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 528 (S.D.N.Y. 1998) (no FLSA certification discussion); *Brennan v. Arnheim & Neely*, 410 U.S. 512, 93 S. Ct. 1138 (1973) (same).

By Plaintiffs' logic, every employer that qualifies as a common enterprise under 29 U.S.C. § 203(r), must be automatically subject to subject to FLSA collective certification.   This cannot be true:  "evidence of common ownership is not evidence that [an] unlawful employment policy was in place at each of [Hudson's locations]."   *Guaman v. 5 M Corp.*, No. 13 Civ. 03820

(LGS), 2013 WL 5745905, at *3 (S.D.N.Y. Oct. 23, 2013) (rejecting certification based on common ownership arguments).[22]

### 4.    Plaintiffs' Policy And Discovery Arguments Are Misplaced

Plaintiffs contend that the existence of four wage-hour lawsuits in the last fifteen years, somehow means that Hudson News is like a "car compan[y]" that "choose[s] to let a few individuals die from faulty airbags[.]"  (Memo. at 1-2, 20-22)  This is a truly offensive analogy that makes no sense on multiple levels.  Four wage-hour cases in a fifteen year period hardly qualifies as a "fifteen-year pattern of misconduct," especially given that Hudson has over 6,000 employees in more than 700 stores nationwide.  (Memo. at 2; Yockelson Dec. ¶ 7.)  Moreover, each of those cases was settled before any finding of liability: "the mere existence of [prior] action[s] does not add to plaintiff's showing."  *Khan*, 2011 WL 5597371, at *5, n. 6.  Plaintiffs' claim that Hudson is "happy to engage in serial litigation" is nonsensical, and especially ironic given Plaintiffs' insistence on filing their baseless Motion.  (Memo. at 2.)

Plaintiffs' argument that Hudson "will suffer no prejudice" if certification is granted is patently false.  (Memo. at 21)  Hudson should not be unduly burdened by another "frivolous fishing expedition conducted by plaintiff at the employer's expense."  *Prizmic v. Armour, Inc.*, No. 05-CV-2503 (DLI) (MDG), 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006).[23]  Further, Plaintiffs' argument that "discovery of class information" is appropriate here is wrong.  (Memo. at 22-23.)  The "notice and opt-in process outlined by the FLSA is not a discovery device to

---

[22] In any event, Hudson is not a single integrated enterprise as explained in Factual Statement Section II, *supra*. Indeed, "Hudson Group" is more of a "trade name" referring to "a wide range of companies that…we have partial or full ownership of.  Hudson Group has a very diverse and complicated business structure, with a significant amount of variety of ownership interests and places where we do business."  (Mullaney Tr. 7:16-8:2.)

[23] Plaintiffs' "public policy" cases are also inapposite.  *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 320 (S.D.N.Y. 2011) (granting certification only where numerous opt-in plaintiffs submitted declarations supporting certification, and eight opt-in plaintiffs joined the suit); *Arpi v. Sterbach Holdings, LLC*, No. 12 Civ. 6764, 2012 WL 6200909 at *1 (S.D.N.Y. Dec. 10, 2012) (no discussion of public policy); *Hamadou*, 915 F. Supp. 2d at 660-61 (granting only narrow certification and where supported by substantial detailed evidence).

determine whether conditional certification is appropriate." *Sanchez v. JMP Ventures, L.L.C.*, 2014 WL 465542, at *2 (*citing Myers*, 624 F.3d at 555).  This is true especially in a case like this, where Plaintiffs' evidence is deficient.  *See Khan*, 2011 WL 5597371, at *5 ("we decline to facilitate the expenditure of additional resources and reject plaintiff's request to order disclosure of contact information").

Finally, where Plaintiffs fail to adequately demonstrate that they are "similarly situated" to prospective plaintiffs, equitable tolling is not justified.  *Id.* (*citing Evancho v. Sanofi–Aventis U.S. Inc.*, No. 07-2266 (MLC), 2007 WL 4546100, at *4 (D.N.J. Dec. 19, 2007)).

## CONCLUSION

Plaintiffs' own sworn statements dictate that their Motion must fail.  They have repeatedly sworn to performing **none** of the duties that other Hudson Managers perform on a daily basis.  This fact is highlighted by 19 sworn declarations from Hudson Managers nationwide, including the very individuals Plaintiffs allege to be "non-managerial."  Further, under no circumstances can Plaintiffs' self-serving, anonymous, and conclusory declarations be sufficient to support **any** class, let alone a nationwide class.  Given the above, Defendants respectfully request that the Motion be denied with prejudice.

Dated: January 16, 2015
         New York, New York

                              **DLA PIPER LLP (US)**


                              By:    /s/ Phillip H. Wang
                                     Phillip H. Wang, Esq.
                                     1251 Avenue of the Americas
                                     New York, NY  10020-1104
                                     Tel: 212.335.4500
                                     Fax: 212.335.4501

                                     Joseph Kernen
                                     (admitted *pro hac vice*)
                                     One Liberty Place
                                     1650 Market Street, Suite 4900
                                     Philadelphia, Pennsylvania 19103-7300
                                     Tel: 215.656.3345
                                     Fax: 215.606.3345

                                     *Attorneys for Defendants Airport*
                                     *Management Services, LLC and Hudson*
                                     *Group (HG) Retail, LLC*