UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

MOHAMMED NABI and RIFAT RIZVI, *on behalf*      :
*of themselves and others who are similarly situated*,      :
                                                                        :
                                                Plaintiffs,      :
                                                                        :
                        -against-                                  :
                                                                        :
HUDSON GROUP (HG) RETAIL, LLC,               :
AIRPORT MANAGEMENT SERVICES, LLC,  and   :
John Does #1-10,                                       :
                                                                        :
                                                Defendants.      :

------------------------------------------------------------------- X

┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____               │
│ DATE FILED:  9/28/2015               │
└─────────────────────────────────────┘

14-CV-4635 (VEC)

ORDER

VALERIE CAPRONI, United States District Judge:

Plaintiffs Mohammed Nabi and Rifat Rizvi bring this action on behalf of themselves and

others similarly situated (collectively, the "Plaintiffs") against Hudson Group (HG) Retail, LLC

and Airport Management Services, LLC (collectively, the "Defendants" or "Hudson"), alleging

violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York

Labor Law ("NYLL").  Now pending before the Court is Plaintiffs' Motion for Conditional

Collective Certification pursuant to 29 U.S.C. § 216(b) (the "Motion"), which Defendants

oppose.  For the reasons set forth below, Plaintiffs' Motion is DENIED.

## BACKGROUND

Defendants are owners and operators of more than700 news and travel retail shops

operating in more than 70 airport and commuter stations across North America.  Compl. ¶ 7;

Mullaney Decl. ¶ 4; Yockelson Decl. ¶ 7.  Defendants' airport locations operate as joint ventures

("JV"s) with over 60 different Disadvantaged Business Enterprises.  Mullaney Decl. ¶ 6.  More

than 70% of Defendants' employees and managers work in one of Hudson's JV airport locations.

Yockelson Decl. ¶ 6.  In contrast, Defendants' commuter locations typically do not operate as

joint ventures and consist almost exclusively of Hudson News newsstand stores.  Mullaney Decl.

¶ 14.  Approximately one-third of Defendants' workforce is governed by 21 different collective

bargaining agreements, each of which is negotiated with different unions and which affects the

conditions under which both bargaining unit employees and managers work.  Yockelson Decl. ¶

5.

      Plaintiff Nabi was employed by Defendants from 1991 to May 12, 2013; he worked in all

six Hudson locations in Grand Central Station.  Nabi. Decl. ¶ 1.  In approximately 1998, Nabi

was given the title "supervisor," and in or around 2005, he was given the title "manager." *Id.*

Plaintiff Rizvi was employed by Defendants from 2003 to September 7, 2012; she worked in

thirteen Penn Station locations and six Grand Central locations.  Rizvi Decl. ¶ 1.  In or about

January 2004, Rizvi was given the title "operations manager." *Id.*

      Throughout the course of their employment, Plaintiffs allege that their primary duties

consisted of non-managerial tasks such as working the cash register, stocking shelves, cleaning

and assisting customers.  Nabi. Decl. ¶ 1; Rizvi Decl. ¶ 1.  Plaintiffs did not perform managerial

duties such as hiring and firing other employees, or making recommendations about the hiring,

firing or job evaluations of other employees.  Nabi. Decl. ¶ 5; Rizvi Decl. ¶ 5.  Plaintiffs were

paid on a salary basis, and they never received wage statements informing them of their hourly

rate or premium pay for my hours worked over 40 hours per week.  Nabi. Decl. ¶¶ 3, 6-7; Rizvi

Decl. ¶¶ 3, 6-7.  Plaintiffs claim that they also observed other Hudson employees with

managerial titles whose work duties, like theirs, primarily consisted of non-managerial tasks, and

who did not receive hourly wage statements or overtime pay.  Nabi Decl. ¶¶ 2- 3, 5-7; Rizvi

Decl. ¶¶ 2- 3, 5-7.  Plaintiffs have provided the names of eight such employees with titles of

"manager," "operations manager" and "floor manager" who worked with them at Grand Central

and Penn Station locations.  Nabi. Decl. ¶ 2; Rizvi Decl. ¶ 2.  In her Declaration, Plaintiff Rizvi

also states that she personally observed more than ten additional current managerial employees who performed primarily non-managerial duties but who did not wish to disclose their names for fear of retaliation. Rizvi Decl. ¶ 2.

Plaintiffs' counsel, Anne Seelig, Esq., has also submitted a sealed declaration listing the names of five additional "managers," "store managers" and "operations managers" who performed primarily non-managerial duties at Hudson's Grand Central, Penn Station and Times Square locations. Seelig Decl. ¶¶ 2, 4-7. According to her declaration, each of these employees told Seelig that, although they did not wish to join the lawsuit for fear of retaliation, they would be inclined to join as opt-in plaintiffs in the event that a conditional class is certified. *Id.* ¶¶ 9-10.

In opposing Plaintiffs' Motion, Defendants have submitted sworn declarations from various Hudson managers, including managers working at the Grand Central and Penn Station locations, refuting Plaintiffs' allegations.[1] Some of these declarations have been submitted on behalf of the same managers identified in Plaintiffs' Declarations as potential class members. *See, e.g.*, Wang Decl. Exs. 8, 10, 14, 20.

Since 2000, Defendants have been sued at least four previous times based on similar claims of misclassification and failure to pay overtime. Pls.' Mem. at 1 (citing cases). In each of these actions, the case was settled and a class was never certified. *Id.* In one such action filed in this Court, *Khan v. Airport Mgmt. Servs., LLC*, No. 10 CIV. 7735(NRB), 2011 WL 5597371

---

[1]      Plaintiffs argue that these declarations were improperly obtained and should be disregarded or stricken from the record because Defendants' counsel did not (1) warn the declarants that they were potentially acting against their own interests in a pending lawsuit; (2) advise of them of their right to seek counsel; (3) advise them of their right to opt out of signing the declarations without suffering adverse consequences or (4) permit them to correct errors in their declarations. Pls.' Reply at 4-5; Supp. Decl. of Nabi ¶¶ 3-5, 6-7; Supp. Decl. of Rizvi ¶¶ 3-5, 6-7. As a result, Plaintiffs argue that Defendants' counsel violated the New York Rules of Professional Conduct. Pls.' Reply at 5. Because attorney discipline is not the subject of the present Motion and because Plaintiffs fail to meet their burden irrespective of Defendants' proffered declarations, the Court need not further address this issue. *Jin Yun Zheng v. Good Fortune Supermarket Grp. (USA), Inc.*, No. 13-CV-60(ILG), 2013 WL 5132023, at *7 (E.D.N.Y. Sept. 12, 2013).

(S.D.N.Y. Nov. 16, 2011), Judge Buchwald denied a similar motion for conditional certification

filed by another plaintiff who worked at Defendants' Penn Station and Grand Central locations.

## DISCUSSION

**I.     The Legal Standard**

### A. The Executive Exemption under the FLSA

The FLSA generally requires that employers pay an employee one and one-half times the

employee's regular rate if the employee works more than forty hours during a work week.  29

U.S.C. § 207(a)(1).  Employers do not have to pay an overtime premium, however, to any

individual "employed in a bona fide executive, administrative, or professional capacity."  *Id.* §

213(a)(1).  Under Department of Labor regulations, the "bona fide executive" is an employee:

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . .;
> (2) Whose primary duty is management of the enterprise in which the employee is
> employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and
> recommendations as to the hiring, firing, advancement, promotion or any other change of
> status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

### B. Conditional Certification

The FLSA permits employees to maintain an action "for and in behalf of . . . themselves

and other employees similarly situated."  29 U.S.C. § 216(b).  In determining whether to certify a

collective action under Section 216 of the FLSA, courts in the Second Circuit use a two-step

process.  *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010).  First, at the "notice stage,"

plaintiffs must establish that other employees "may be 'similarly situated'" to them.  *Id.* at 555

(citation omitted).  To meet this burden, plaintiffs need only "make a modest factual showing

that they and potential opt-in plaintiffs together were victims of a common policy or plan that

violated the law."  *Id.* (internal quotations and citations omitted).  While plaintiffs' burden is

modest, "it is not non-existent," *Fraticelli v. MSG Holdings, L.P.*, No. 13-CV-6518(JMF), 2014 WL 1807105, at *1 (S.D.N.Y. May 7, 2014), and generally cannot be satisfied by "unsupported assertions." *Myers*, 624 F.3d at 555 (citation omitted).  Nonetheless, courts employ a "low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id.* (emphasis in original) (citation omitted).  At this first stage, therefore, courts do not examine "whether there has been an actual violation of law . . . ." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (citing *Krueger v. N.Y. Tel. Co.,* 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993) ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine whether a 'similarly situated' group exists." (alteration in original))).

At the second stage, when the court has a more developed record, the named plaintiffs must prove that "the plaintiffs who have opted in are *in fact* similarly situated to the named plaintiffs." *She Jian Guo v. Tommy's Sushi Inc.*, No. 14-CV-3964(PAE), 2014 WL 5314822, at *2 (S.D.N.Y. Oct. 16, 2014) (quoting *Myers*, 624 F.3d at 555) (emphasis from *She Jian Guo*). The action may be "'de-certified' if the record reveals that [the opt-in plaintiffs] are not [similarly situated], and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers*, 624 F.3d at 555 (citations omitted).

## II.    Plaintiffs Fail to Demonstrate That the Class They Seek to Certify is "Similarly Situated"

Plaintiffs seek to certify a class consisting of "all Assistant General Managers and Assistant Operations Managers (which also includes operations managers, assistant managers, operation managers of books or bookstore managers, operation managers of merchandise or merchandizing managers, loss prevention managers and specialty brand managers)" employed at Defendants' Hudson News newsstands and stores in New York and throughout the United States

(collectively the "Covered Employees").  Plaintiffs' proposed class of Covered Employees

includes approximately 480 Hudson employees nationwide.  Yockelson Decl. ¶ 8.

Plaintiffs claim that they are "similarly situated" to the Covered Employees for

conditional certification purposes because they were "victims of a common policy or plan that

violated the law."  Pls.' Mem. at 6-7 (citing cases).  In particular, Plaintiffs claim that the

Covered Employees were subject to the same illegal policies by which Defendants failed to pay

overtime to employees who had been misclassified as exempt managers, when in fact such

employees were primarily performing non-managerial, non-exempt tasks.  Pls.' Mem. at 14.

Plaintiffs support their claims with respect to Defendants' Grand Central and Penn

Station locations through affidavits that relate Plaintiffs' personal experiences as well as their

observations and conversations with other managerial employees who worked at these locations.

Plaintiffs' claims with respect to Defendants' other commuter station and airport locations in

New York and throughout the United States are far more tenuous.  Plaintiffs rely heavily on

deposition testimony of Hudson's Senior Vice President of People & Administration, Richard

Yockelson, in which Yockelson acknowledges that, *inter alia*: (1) Defendants created uniform

job descriptions that apply to all Covered Employees regardless of their work location,

Yockelson Dep. 76:24-25; 77:12-16; (2) Covered Employees might perform non-managerial

tasks while covering for other employees who are out sick, *id.* at 72:8-73:24; 75:23-76:5; (3) the

job functions performed by assistant operations managers working at New York train stations are

substantially similar to those performed by assistant operations managers working at other train

stations nationally, *id.* at 46:16-23; (4) all Covered Employees are treated as exempt and not paid

overtime, despite the fact that they often work more than 40 hours per week, *id.* 19:18-23:23,

62:7-12; (5) all Covered Employees receive the same employee handbook and are subject to the

same employment policies, *id.* 74:19-24 and (6) all Covered Employees in New York receive the

same type of wage statements, *id.* 69:18-24; 70:22-25, and are compensated according to the same system regardless of their work location, *id.* at 72:2-7. These statements are simply insufficient to give rise to an inference that Plaintiffs are "similarly situated" to a Covered Employee class consisting of some 480 managerial employees employed at Hudson's airport and commuter station locations nationally.

While the standard of proof on a motion to certify is admittedly "low," *Myers*, 624 F.3d at 555 (citation omitted), the scope of the class Plaintiffs seek to certify far exceeds what can be reasonably inferred from the evidence they set forth, and therefore their Motion fails. As an initial matter, Plaintiffs seek to certify a class consisting of eight types of managers, but their Declarations only demonstrate personal knowledge or observation of three management positions, only one of which, the "operations manager" position, is specifically listed among the eight positions they seek to certify. Plaintiffs have made no showing, based on personal knowledge, observation, hearsay testimony, or otherwise, that the other seven types of management positions they seek to include in the collective action (Assistant General Managers, Assistant Operations Managers, assistant managers, bookstore managers, merchandizing managers, loss prevention managers and specialty brand managers) have been misclassified. Indeed, the record is devoid of specific information about the actual duties performed by managers in these positions, and therefore Plaintiffs' showing is deficient. *See Prizmic v. Armour, Inc.*, No. 05-CV-2503(DLI)(MDG), 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) (plaintiff must provide "actual evidence of a factual nexus between his situation and those that he claims are similarly situated rather than mere conclusory allegations." (citations omitted)); *see also Myers*, 624 F.3d at 555 ("The modest factual showing cannot be satisfied simply by unsupported assertions." (citation and internal quotations omitted)).

With respect to other operations managers employed by Defendants nationally, Plaintiffs have failed to set forth any evidence suggesting that operations managers working at Hudson's JV airport locations perform duties that are similar to theirs.  Instead, the record reflects that the operation of Hudson's airport locations varies based on the particular airport and business partners, and that Hudson's airport operations are fundamentally different from their commuter station operations.  Yockelson Dep. 11:21-13:2, 37:17-45:18; Mullaney Decl. ¶ 7.  Because there appear to be significant differences in the policies, practices and regulations under which Hudson's airport stores operate, there is no evidence from which the Court can infer the existence of a nationwide policy to misclassify operations managers.  *See Ahmed v. T.J. Maxx Corp.*, No. 10-CV-3609(ADS)(ETB), 2013 WL 2649544, at *14 (E.D.N.Y. June 8, 2013) (denying nationwide certification where the court found "vast differences in the practices of individual stores across the country" (quoting *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 478 (S.D.N.Y. 2010)).

Plaintiffs also fail to carry their burden with respect to operations managers employed at commuter stations other than Grand Central and Penn Station.  The mere fact that Defendants created a uniform job description for this position and that operations managers may perform some of the same tasks at commuter station newsstands nationally is insufficient to create an inference that operations managers are generally misclassified.  *See Guillen v. Marshalls of MA, Inc.*, No. 09 CIV. 9575(LAP)(GWG), 2012 WL 2588771, at *1 (S.D.N.Y. July 2, 2012) (hereinafter "*Guillen II*") ("[C]ourts in this Circuit have routinely held that the mere fact of a common FLSA-exempt designation, job description, or uniform training is insufficient" to create an inference that such employees are similarly situated for FLSA purposes); *Eng–Hatcher v. Sprint Nextel Corp.,* No. 07 Civ. 7350, 2009 WL 7311383, at *3 (S.D.N.Y. Nov. 13, 2009) (denying certification where the plaintiff could only point to a presumptively legal official policy

and relied only upon her own deposition testimony to support the allegation of a contrary de facto illegal policy).  While Plaintiffs' allegations as to the Grand Central and Penn Station locations are relatively strong at this stage of the litigation, they are simply "too localized to merit a conditional nationwide class certification."  *Guillen II*, 2012 WL 2588771, at *2 (citing *Vasquez v. Vitamin Shoppe Indus. Inc.*, No. 10 CIV. 8820(LTS)(THK), 2011 WL 2693712, at *3 (S.D.N.Y. July 11, 2011) ("[A] geographically concentrated cluster of [store managers] whom [plaintiff] claims were assigned duties inconsistent with their exempt classification . . . is too thin a reed on which to rest a nationwide certification.")).

Although courts in this Circuit have occasionally found plaintiffs to be similarly situated to co-workers at affiliated locations where they did not work, this has generally occurred when the employees are supervised by a single manager or where the businesses at issue share employees without retraining them and subject those employees to the same unlawful practices. *See, e.g.*, *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 663-66 (S.D.N.Y. 2013) (certification granted as to gas stations in the Bronx and Queens where plaintiffs showed similar policies enforced by a single manager, but not as to other locations in the state of New York); *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 368 (S.D.N.Y. 2014) (certification granted with respect to class of employees who were permitted to work at multiple restaurant locations without retraining and who were subject to the same unlawful pay practices); *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 CIV. 8629(KPF), 2013 WL 5211839, at *5 (S.D.N.Y. Sept. 16, 2013) (certification granted as to New York City locations where employees were routinely shared and subject to the same employment practices, but not as to other locations).  While evidence that the various Hudson locations operated as part of a "single enterprise" is not irrelevant, it is also not sufficient to establish that the Covered Employees are "similarly situated" under the FLSA.  *See Guaman v. 5 M Corp.*, No. 13 CIV. 03820(LGS), 2013 WL 5745905, at *3 (S.D.N.Y. Oct. 23, 2013)

("Plaintiff's evidence of common ownership is not evidence that the same unlawful employment policy was in place at each of the four restaurants."). Because Plaintiffs have failed to bridge the gap between the evidence they have proffered and the relief they are requesting, their Motion fails.

**III.    Plaintiffs Fail to Demonstrate any Justification for Nationwide Discovery**

In addition to seeking conditional certification, Plaintiffs have requested that the Court order Defendants to produce a list of all Covered Employees, along with information about those employees, including their work location, periods of employment, contact information and social security numbers. Pls.' Mem. at 22-23. While, in some circumstances, courts may order defendants to disclose information regarding potential class members even when certification is denied, here Plaintiffs have provided no justification for nationwide discovery, and therefore their request for such discovery is denied. *See Khan*, 2011 WL 5597371, at *5 (declining to order discovery where plaintiff produced "virtually no evidence to support his claim that a collective action is appropriate" (citing *Prizmic*, 2006 WL 1662614, at *3)).

**IV.    Plaintiffs Request for Equitable Tolling is Moot**

In the event that the Court were to grant their Motion, Plaintiffs request that the statute of limitations be tolled "until such time that they are able to send notice to potential opt-in plaintiffs." Pls.' Mem. at 24. Because Plaintiffs' Motion is denied, and because there is presently no class of plaintiffs to which tolling would be applied, Plaintiffs' request is denied without prejudice to renewal in the event that other plaintiffs opt into this action.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion is DENIED without prejudice to renewal in the event Plaintiffs wish to seek certification with respect to managerial staff employed at Hudson's Grand Central and Penn Station locations. Plaintiffs' request for discovery and

equitable tolling are similarly denied without prejudice.  The Clerk of Court is respectfully requested to close the open motion at docket entry number 21.  The parties are directed to appear before the Court for a status conference in this matter on October 16, 2015 at 10:00 a.m.

**SO ORDERED.**

**Date:   September 28, 2015**
        **New York, New York**

**VALERIE CAPRONI**
**United States District Judge**